FILED

2015 Feb-09  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **HEATHER WRIGHT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:   4:13-cv-01425-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Heather Wright brings this action pursuant to Section 205(g) and Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   42 U.S.C. §§ 405(g), 1383(c).   Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

This action arises from Plaintiff's application for DIB and SSI on June 21, 2010, alleging disability beginning on November 1, 2009.   (Tr. 160-67).   Plaintiff's application was denied both initially and also upon reconsideration.   (Tr. 97-101, 103-07).   Plaintiff requested and received a hearing before Administrative Law Judge Perry Martin ("ALJ"), on March 2, 2011, in Montgomery, Alabama.   (Tr. 71).   In his decision, dated April 14, 2011, the ALJ determined that Plaintiff was not disabled under the Act from the alleged onset date through the date of the decision.   (Tr. 58).

Over ten months after the ALJ issued his decision, Plaintiff received a psychological evaluation from the Gadsden Psychological Services, LLC, dated February 28, 2012. (Tr. 36-41). In a report connected to that assessment, David R. Wilson, Ph.D., diagnosed Plaintiff with "Panic Disorder with Agoraphobia, Major Depressive Disorder, Recurrent (severe)." (Tr. 41). Although he was a nontreating physician, Dr. Wilson found, in relevant part,

> [Plaintiff's] [l]evel of functioning is so impaired that she does not appear to be capable, *at this time*, of working at any type of job environment. Would have great difficulty with the task demands and with interpersonal aspects of any job setting. It is not likely that her status will improve significantly in the next 12 months.

(Tr. 41 (emphasis added)). Dr. Wilson's opinion was based upon Plaintiff's medical records,[1] various clinical tests, and an interview with Plaintiff. (Tr. 36-41). Plaintiff submitted this assessment to the Appeals Council to supplement her request for review of the ALJ's decision. (Tr. 36-41).

On May 31, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 13-19), rendering the ALJ's decision final and, therefore, a proper subject of this court's appellate review. *See* 20 C.F.R. §§ 404.981, 422.210(a). On July 15, 2013, the Appeals Council denied Plaintiff's subsequent petition to reopen and change its earlier decision. (Tr. 1). In both instances, the Appeals Council acknowledged Dr. Wilson's psychological evaluation, but concluded that, because it post-dated the ALJ's decision and provided an analysis of Plaintiff's condition at a later time, the records from the evaluation did not affect the ALJ's decision about whether the claimant was disabled on or before April 14, 2011. (Tr. 1, 14).

---

[1] The record indicates that Dr. Wilson relied on the same records that were made available in this case to the ALJ and Appeals Council.

At the time of Plaintiff's ALJ hearing, Plaintiff was forty years old and had an eighth grade education.   (Tr. 76-77).   Plaintiff has previously worked as a home care provider, manager, cook, and waitress.   (Tr. 78, 89).   With regard to her domestic life, Plaintiff testified that she had been living in a storage building on her boyfriend's mother's property for a little over a year.   (Tr. 77).   Plaintiff explained to the ALJ that the only income she receives is from food stamps.   (Tr. 77).

Plaintiff complains that she suffers from severe panic disorder with agoraphobia, depression, and anxiety disorder.   (*See* Tr. 60, 78, 196).   According to Plaintiff, she has panic attacks three to four times a week, each lasting approximately eight to ten minutes.   (Tr. 81). Plaintiff believes these panic attacks are triggered by going outside and that they have limited her ability to engage in substantial gainful activity since November 1, 2009.   (Tr. 82, 160, 164, 196).   Plaintiff claims to have lost ten jobs due to panic attacks, including her job as a manager at Shoney's which she held for thirteen-and-a-half years.   (Tr. 84-86).   Plaintiff testified that, while at Shoney's, she did not know how to control her panic attacks, and they sometimes occurred six to ten times a day causing her to blackout.   (Tr. 85).

Since working at Shoney's, Plaintiff has not been able to hold a job for more than six months at a time.   (Tr. 86).[2]   Plaintiff has consistently been noncompliant in maintaining her medical treatments (Tr. 344, 398), and has never consistently taken prescribed medication.   (Tr. 83-83).   Plaintiff testified that even with appropriate medical treatment she still could not work due to her panic attacks.   (Tr. 84).   At the time of the onset of her alleged disability, Plaintiff

---

[2] The court notes that a complete and detailed account of Plaintiff's employment history is absent from the record.   The record contains only Plaintiff's testimony, ambiguous earnings records (Tr. 168-191), and a mostly blank "Work History Report," which Plaintiff was unable to complete.   (Tr. 226).

What is clear from the record is that Plaintiff has been frequently employed, even after she began suffering from panic attacks.   Plaintiff's hearing testimony, for example, suggests she held and lost (due to panic attacks) at least *ten* jobs in the preceding ten years.   (*See* Tr. 86).

was a cook at Huddle House.   (Tr. 77-78).   She had been working for about six months when she testified she was terminated due to her panic attacks.   (Tr. 77-78).

Prior to her alleged period of disability, Plaintiff received treatment at various institutions for her health issues.   In June 2006, Plaintiff was seen at Polk Medical Center for a panic attack that Plaintiff claimed was brought on by stress at home.   (Tr. 327).   From July 12 to 17 of the same year, Plaintiff was admitted to Cobb Douglas Community Service because of suicidal ideations and depression.   (Tr. 267).   Upon her discharge, Plaintiff was prescribed Prozac and Vistarl to be taken daily.   (Tr. 267-68).   On March 10, 2009, Plaintiff received treatment for a urinary tract infection and acute abdominal and flank pains at Stringfellow Memorial Hospital. (Tr. 301).   She was discharged with medication management.   (Tr. 301-19).   On May 17, 2009, Plaintiff returned to Stringfellow with an unremarkable laceration on her left leg.   (Tr. 290).

During her alleged period of disability, Plaintiff was treated sporadically at Calhoun Celburne Mental Health Clinic ("CCC").   Although Plaintiff had first visited CCC in 2008, Plaintiff was unable to receive medication for her panic attacks because she was unable to return to the clinic on a regular basis due to transportation issues.   (Tr. 80).   In June 16, 2010, Plaintiff returned to the CCC and was given a tentative diagnosis of panic disorder with agoraphobia and depression.   (Tr. 333, 337).   On July 16, 2010, Plaintiff overslept and missed a follow-up appointment with a CCC therapist, which was rescheduled.   (Tr. 344).   On February 18, 2011, Plaintiff returned to CCC for a third time and received inpatient psychiatric treatment.   (Tr. 395).   At this intake, Plaintiff's therapist, Bonne Evans, found Plaintiff to have a poor history of compliance with treatment.   (Tr. 398; *see also* 80-84, 87, 344, 398).   Plaintiff

was not provided with medication management, and was told to attend individual therapy.   (*See* Tr. 80, 398).

On March 18, 2011, Plaintiff returned for a follow-up appointment with Evans and Dr. Maurice Jeter at Jacksonville Mental Health Clinic.   (Tr. 403-08).   Evans and Dr. Jeter found Plaintiff to be active and cooperative, participating in developing an ongoing treatment plan. (Tr. 408).   Their plan involved no immediate medication, but in conformity with Evans's prior recommendations, anticipated future individual therapy sessions.   (*See* Tr. 80, 406-07).

After applying for benefits, Plaintiff was the subject of several mental health examinations during the relevant period.   On August 27, 2010, Plaintiff attended a psychological consultative examination conducted by Dana Davis, Ph.D.   (Tr. 346-48).   At this appointment, Plaintiff reported that she had some periods of homelessness, but had friends that let her stay with them.   (Tr. 346).   Plaintiff reported that she was anxious and jittery and continued to suffer from panic attacks.   (Tr. 347).   Dr. Davis performed a mental status examination, and found that, although Plaintiff's symptoms might fit generalized anxiety disorder, her description of her panic attacks did not seem credible.   (Tr. 347-48).   Dr. Davis believes that Plaintiff's descriptions of her panic attacks were atypical, and her episodes "seemed to be simply more behavioral acting-out."   (Tr. 347).

On September 3, 2010, Plaintiff underwent a psychiatric review from Robert Estock, M.D., a State Agency medical consultant.   (*See* Tr. 363-75).   Dr. Estock found that Plaintiff had only a mild limitation in restriction on activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace.   (Tr. 373). Furthermore, Dr. Estock found Plaintiff had no episodes of decompensation.   (Tr. 373).   He

concluded that, based on the Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders, Plaintiff's impairments were not severe.   (Tr. 375).

In addition to the medical expert's evaluations, Plaintiff's friend, Edith Feldser, submitted a Third Party Function Report detailing her knowledge of Plaintiff's situation.   (Tr. 205-12). This report largely confirmed that Plaintiff is mostly independent in activities of daily living. (*See* Tr. 205-212).   Feldser indicated that Plaintiff "fears going outside" and suffers from panic attacks, but also that Plaintiff lives alone, sometimes prepares her own meals, and does her own cleaning and laundry.   (*See* Tr. 205-07, 212).

Based on Plaintiff's RFC and vocational profile (age, education, and past work experience), the ALJ elicited testimony from vocational expert Dr. William Green, indicating that a hypothetical individual, who was similarly situated in the relevant respects could perform Plaintiff's past relevant work as a manager, a waitress, and a cook.   (Tr. 65, 89-92).   Based on the vocational expert's testimony, Plaintiff's testimony, and the rest of the record at the time of the hearing, the ALJ found that Plaintiff was not disabled under the Act.   (Tr. 66).

## II.   ALJ Decision

Disability under the Act is determined under a five-step analysis.   20 C.F.R. ' 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.   *Id.* § 404.1520(a)(4)(i).   "Substantial work activity" is work activity that involves doing significant physical or mental activities.   *Id.* § 404.1572(a).   "Gainful work activity" is work that is done for pay or profit.   *Id.* § 404.1572(b).   If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.   *Id.* § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.   *Id.* § 404.1520(a)(4)(ii).   Absent such impairment, the claimant may not claim disability.   *Id.*   Third, the

ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in the federal regulations. *See id.* §§ 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

In the present case, after considering the record in its entirety as it existed at that time, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has a combination of severe impairments of depression and panic disorder. (Tr. 60). However, with regard to the third prong, the ALJ determined that Plaintiff's impairment neither met nor equaled Listing 12.04 or Listing 12.06 under the Listings of Impairments, *see* 20 C.F.R. § 404.1520(a)(4)(iii). (Tr. 61). The ALJ noted that "[n]o medical expert has concluded that the claimant's impairments meet or equal a listed impairment." (Tr. 61). Next, the ALJ considered the requirements of "Paragraph B" of each Listing, each of which require the mental impairments to result in at least

two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each for extended duration.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.   Because Plaintiff had no more than moderate restrictions or difficulties in each of these categories, and no episodes of decompensation, the ALJ found the "Paragraph B" criteria were not satisfied.   For many of these same reasons, the ALJ also found that Plaintiff failed to present evidence establishing the presence of "Paragraph C" criteria, which requires repeated episodes of decompensation, propensity toward decompensation, or the need for highly supportive living arrangements.   *See id.*

Before proceeding to the fourth and fifth prongs of the sequential analysis, the ALJ completed a RFC assessment.   (Tr. 62-65).   In completing this assessment, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not wholly credible.   The ALJ noted that CCC treated Plaintiff for her alleged mental impairments, but did not provide the treatment one would expect for a totally disabled individual.   (Tr. 64).   For example, Plaintiff was not provided with medication management, and was told to attend individual therapy.   (Tr. 80, 394-98, 400-09). Furthermore, Plaintiff has generally remained noncompliant with her treatment.   (*See, e.g.*, Tr. 80-84, 87, 344, 398).   Based on Plaintiff's testimony, the ALJ found that Plaintiff's impairment was "generally under control" because she had successfully tolerated her impairments without medication since 2007.   (Tr. 64; *see also* Tr. 82).

The ALJ also gave significant weight to both Dr. Davis and Dr. Estock's evaluations, which found Plaintiff neither credible nor severely disabled.   (Tr. 65, 348).   The ALJ found

that was Dr. Davis's testimony consistent with the records and reports of Plaintiff's treating physicians and the evidence as a whole, and that Dr. Davis's opinion is entitled to more weight because he was a specialist in Psychology and a Program medical expert.   (Tr. 65).   According to the ALJ, Dr. Estock's opinion was due significant weight, in part, because it provided specific reasons for his opinion and was well grounded in the evidence of record.   (Tr. 65). Conversely, the ALJ found the opinions of Plaintiff's treating physicians too incomplete to serve as the basis of an RFC.   (Tr. 65).

For these reasons, the ALJ determined that, notwithstanding her impairments, the objective evidence showed that Plaintiff had the RFC to:

> perform work at all exertional levels, with moderate limitations in her ability to understand, remember and carry out detailed tasks, maintain attention and concentration for extended periods of approximately two-hour segments, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, respond to customers or other members of the general public, ask simple questions or request assistance, respond appropriately to supervision, respond appropriately to co-workers, maintain socially appropriate behavior and to adhere to standards of neatness and cleanliness, respond to changes in work setting, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places to use public transportation.

(Tr. 62).   Accordingly, at the fourth step, the ALJ determined that Plaintiff's RFC did not preclude Plaintiff from performing her past relevant work as a waitress, manager, or cook.   (Tr. 65).   In making this determination, the ALJ relied on Dr. Green, a vocational expert who testified that a hypothetical individual of Plaintiff's same age, education, past relevant work experience, and RFC would be able to perform her past relevant work.   (Tr. 89-91). Therefore, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that

Plaintiff, therefore, is not entitled to benefits from November 1, 2009, to the date of his decision, April 4, 2011.   (Tr. 66).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.   (*See* Pl.'s Mem. 9-25).   Plaintiff presents several arguments: (1) the Appeals Council failed to remand based on report of evaluation of psychologist Dr. Wilson; (2) ALJ failed to apply proper legal standard; (3) the ALJ failed to state adequate reasons for finding claimant not credible; (4) Plaintiff's impairments met Listings 12.04 and 12.06; (5) the ALJ failed to consider all of Plaintiff's severe impairments; and (6) the ALJ improperly drew adverse inferences from a lack of medical treatment.   (Pl. Mem. 1-2).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Section 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.   *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *See id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).   If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See id.*   While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."   *Lamb*, 847 F.2d at 701.

## V.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

### A.    The Appeals Council Properly Considered Dr. Wilson's Evaluation and Report.

Plaintiff's first and primary argument asserts that the Appeals Council failed to consider the evaluation and report of Dr. Wilson (the "new evidence").   (Pl. Mem. 9-12).   Plaintiff only argues that the new evidence should have resulted in Appeals Council review.   (Pl. Mem. 9). Specifically, at issue is whether the Appeals Council is required to consider a retrospective physician evaluation that occurred ten months after the ALJ rendered its decision.

Many times, when a claimant properly presents new evidence to the Appeals Council, the reviewing court must consider whether that new evidence renders the denial of benefits erroneous. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). New evidence must be reviewed only if it is material and relates to the period on or before the date of the ALJ's hearing decision. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); 20 C.F.R. § 404.970(b).[3]   If the Appeals Council determines that the

---

[3] At issue here is only whether Dr. Wilson's new retrospective evaluation and report are material and chronologically relevant.   The evidence is clearly "new" because it came into existence over ten months after the ALJ's decision.   (Tr. 36).

evidence does not render the denial erroneous, the Appeals Council must show in its written denial that it has adequately evaluated the evidence. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)). For the reasons outlined below, the court concludes that the Appeals Council's written denial amply reflects that it adequately evaluated Plaintiff's new evidence and determined that the new evidence was immaterial because it did not relate to the relevant time period.

### 1.    Adequate Evaluation of New Evidence in Written Denial

The threshold issue here is whether the Appeals Council showed in its written denial that it adequately evaluated the evidence at issue.   If the Appeals Council merely "perfunctorily adheres" to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and the decision must be remanded for a determination based on the whole record. *Flowers*, 441 F. App'x at 745.   On the other hand, as the Eleventh Circuit has explained, "because a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (noting the Appeals Council had considered and incorporated the new evidence into the record and therefore was not required to explain its denial).   A brief comparison of the two cases helps reconcile the apparent incongruity between *Flowers*'s stringent "perfunctory adherence" standard and *Burgin*'s less demanding "thorough explanation."

In *Flowers*, the Eleventh Circuit held that the Appeals Council erred by not remanding the case to the ALJ in light of significant new evidence the claimant had offered.   441 F. App'x 745.   The *Flowers* court noted that the Appeals Council merely acknowledged that the claimant had submitted new evidence, but "made no further mention of it or attempt to evaluate it." *Id.*

But the *Flowers* court's remand was not based solely on the Appeals Council's failure to explain how it assessed the evidence.   Rather, the remand was based upon the reality in that case that the new evidence created a "reasonable possibility" that if the ALJ had considered the evidence, she may have more fully credited the testimony of the claimant and one of his supporting witnesses.   *Id.* at 747.   Thus, *Flowers* concluded that the plaintiff's new proffered evidence was material (*i.e.*, there was a reasonable possibility that the new evidence could change the ALJ's decision).   *Id.* ("Given the *materiality* of Flowers's new evidence to the ALJ's RFC finding, the Appeals Council's failure to evaluate it, *alone*, requires us to remand this case to the Appeals Council for a disability determination based 'on the total record.") (quoting *Epps*, 624 F.2d at 1273) (emphasis added).[4]   Importantly, the Eleventh Circuit appeared skeptical that the Appeals Council adequately reviewed the evidence because the ALJ placed an "unusual" amount of reliance on a nontreating physician while completely rejected an examining physician's findings. *Id.* at 745.

In *Burgin*, the Eleventh Circuit clarified what it means to adequately evaluate new evidence in a written denial.   420 F. App'x at 903.   The Eleventh Circuit rejected the claimant's argument that the Appeals Council failed to adequately explain its denial of review and refusal to remand.   *Id.*   In doing so, the court explained that:

> [t]he [Appeals Council] must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's decision is contrary to the weight of the record evidence.   When a claimant properly presents new evidence to the [Appeals Council] and it denies review, we essentially consider the claimant's evidence anew to determine whether "that new evidence renders the denial of benefits erroneous."   Thus, because a reviewing court must evaluate the claimant's evidence anew, *the* [*Appeals Council*] *is not required to provide a thorough explanation when denying review*.

---

[4] Thus, the *Flowers* analysis does not affect cases where the claimant presents new but immaterial evidence to the Appeals Council, who perfunctorily adheres to the ALJ decision.

*Id.* (emphasis added) (internal citations omitted).   The key is this: The *Burgin* court, like the *Flowers* court, found materiality to be of the utmost import.   *See id.* (noting remand was not required because new evidence's probative value was "slight and did not render denial of benefits erroneous").

Applying the teachings of *Burgin* and *Flowers* here, this court concludes that the Appeals Council more than adequately demonstrated in its written denial that it adequately evaluated Dr. Wilson's report and evaluation.   Thus, this is not an instance where the Appeals Council perfunctorily adhered to the ALJ's decision.   Indeed, contrary to Plaintiff's contention, the Appeals Council twice articulated reasons why Dr. Wilson's reports and evaluations did not provide a basis for overturning the ALJ's decision.   This is evidenced by the Appeals Council's initial denial of Plaintiff's request for review and its subsequent denial of Plaintiff's request to reopen.   (Tr. 1, 14).   According to the Appeals Council, in its initial denial of review on May 31, 2014:

> We . . . looked at a psychological evaluation from David R. Wilson, PhD dated February 28, 2012 and a Mental Health Source Statement from Dr. Wilson dated February 29, 2012.   The [ALJ] decided your case through April 14, 2011.   This new information is about a later time.   Therefore, it does not affect the decision about whether you were disabled beginning on or before April 14, 2011.
>
> If you want us to consider whether you were disabled after April 14, 2011, you need to apply again.

(Tr. 14).   Although admittedly the Appeals Council did not provide a thorough analysis, it provided more than a perfunctory adherence to the ALJ.   Unlike the situation in *Flowers*, the Appeals Council did not merely reference, without more, Dr. Wilson's report and evaluation. Instead, the Appeals Council stated that it found the new evidence was immaterial (*i.e.*, the evidence does not affect the disability decision because it did not address the relevant period —

the period before the date of the ALJ's hearing decision).   (*See* Tr. 1, 14).   This distinguishes the Appeals Council's approach here from the incorrect approach taken in *Flowers*.

Therefore, based on the Appeals Council's adequate evaluation in its written denial, the court can conclude the Appeals Council provided more than a merely perfunctory adherence to the ALJ's decision.   Accordingly, the Commissioner's decision is due to be affirmed, as to the new evidence, if Dr. Wilson's report and evaluation were either irrelevant or immaterial.

### 2.      Materiality and Relevance

With respect to Plaintiff's new evidence argument, two issues remain: relevancy and materiality.   These are related but different standards.   New evidence is material "if there is a reasonable possibility that the new evidence would change the administrative outcome." *Flowers*, 441 F. App'x at 745 (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). New evidence is relevant if it relates to the period on or before the date of the ALJ's hearing. *Keeton*, 21 F.3d at 1066; 20 C.F.R. § 404.970(b).

In reality, at least in most cases, application of these standards and their analysis can be inextricably tangled.   If new evidence does not relate to the relevant time period, then it is not material.   Indeed, as demonstrated here, this is the basis upon which the Appeals Council twice decided not to consider Dr. Wilson's report and evaluation.   (Tr. 1, 14).[5]   The issue here is whether it was reasonably possible for Dr. Wilson's report and evaluation to change the ALJ's outcome.   For the reasons discussed below, the court concludes there is simply not a reasonable possibility that the evidence from Dr. Wilson would have altered the outcome.   This conclusion is indicated because, as the record facts noted below establish, his diagnosis was not relevant or otherwise material.

---

[5]  Although it is not entirely possible, this Memorandum of Decision attempts to keep the analytical lines as distinct as possible.

15

First, Dr. Wilson is a nontreating physician[6] who conducted an evaluation on Plaintiff that took place over ten months after the ALJ rendered its decision.   Dr. Wilson expressly diagnosed Plaintiff's condition as of February 28, 2011, and did not attempt to assess her condition during the relevant disability period.   Moreover, the new evidence is not corroborated by -- and, in fact contradicts -- the objective medical evidence gathered during the relevant disability period. Finally, the new evidence is irrelevant to the state of Plaintiff's impairment during the relevant time frame because Dr. Wilson's assessment is premised on entirely changed circumstances related to Plaintiff.   Taken together, these facts suggest that the probative value of the new evidence is slight and does not render denial of benefits erroneous.   *See Burgin*, 420 F. App'x at 903.

Second, evidence related to Dr. Wilson's assessment is immaterial because it does not relate to, or reflect on, the disability period.   *Keeton*, 21 F.3d at 1066; 20 C.F.R. § 404.970(b). The Eleventh Circuit has concluded that retrospective diagnoses are only entitled to deference where corroborated by evidence contemporaneous with the relevant period.   *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011).   Specifically, the *Mason* court discredited retrospective diagnoses that did not state that it pertained to the disability period and that conflicted with the medical evidence from the relevant period.   *Id.* at 832-833.   Likewise, other opinions indicate that even a treating physician's retrospective opinion may be rejected if it is conclusory or inconsistent with other evidence on the record.   *See, e.g.*, *Wheeler v. Heckler*, 784 F.2d 1073,

---

[6] As a nontreating physician (*see* Tr. 36), Dr. Wilson's opinions, unlike those of treating physicians, are not entitled to any special deference.   *See Flowers*, 441 F. App'x at 740 ("[T]he opinions of treating physicians are given more weight than non-treating physicians . . . ."); 20 C.F.R. § 404.1527(c)(2); *see also Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (noting that with respect to retrospective diagnoses, the Eleventh Circuit has held that a treating physician is entitled to significant weight, even though he did not treat the claimant until after the relevant determination date), *superseded on other grounds by* 42 U.S.C. § 423(d)(5).

1075 (11th Cir. 1986); *Broz v. Astrue*, Case No. 3:07-cv-00204-RV-EMT, 2008 WL 1995084 (N.D. Fla. May 5, 2008).[7]

Similarly here, Dr. Wilson's evaluation of Plaintiff occurred over *ten* months after the ALJ's decision finding Plaintiff not disabled.   (Tr. 36).   As in *Mason*, the new evidence does not state that it pertains to the relevant period.   *See id.* 832-33.   Instead, Dr. Wilson's report and evaluation indicates only a belated analysis of Plaintiff's impairment (*i.e.*, one outside the relevant disability period).   As explained by the Appeals Council, Plaintiff's impairment at the end of February 2012, is not relevant to the Appeals Council's review of her impairment between November 2009 and April 2011.   (*See* Tr. 14 ("If you want us to consider whether you were disabled after April 14, 2011, you need to apply again.")).

Third, the new evidence also conflicts with the medical evidence from the relevant disability period.[8]   Dr. Wilson's report directly contradicts the evaluations from both Dr. Estock and Dr. Davis, who evaluated Plaintiff during the relevant period and found that she was not credible and her impairments were not severe.   (Tr. 346-48, 363-76).   Importantly, the ALJ found the evaluations by Drs. Estock and Davis to conform to the record as a whole, and it is that record that reflects Plaintiff's status during the relevant disability period.   (Tr. 65).   Thus, while Drs. Estock and Davis found Plaintiff to have only moderate restrictions (Tr. 373), Dr. Wilson found Plaintiff had much more severe limitations.   (Tr. 34).   Specifically, Dr. Wilson found

---

[7] *Boyd*, *Mason*, *Wheeler*, and *Broz* are cases where retrospective diagnoses were considered by an ALJ, not the Appeals Council.   These decisions involve claims where the insured status expired prior to the ALJ's decision. This placed the ALJ in a position to consider at hearing retrospective evidence (*i.e.*, evidence coming about after the relevant time period, which would otherwise typically end on the date of the ALJ's decision).

[8] Although Dr. Wilson's evaluation and report might be construed to corroborate part of Plaintiff's subjective pain assessment, it is otherwise entirely unsupported by the record, including the objective medical evidence.

Plaintiff to have "extreme"[9] limitations regarding Plaintiff's ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine; work I coordination or proximity to others without being distracted; complete a normal workday; and get along with coworkers without distracting them or exhibiting behavioral extremes. (Tr. 34-35). Dr. Wilson similarly concluded that Plaintiff had numerous "marked" limitations. (Tr. 34-35). Accordingly, the new evidence conflicts in almost every material respect with the findings made by medical professionals during -- and even more specifically the objective medical evidence from -- the relevant period.[10]

   For the reasons outlined above, to the extent that the new evidence could be said to relate to a relevant time period at all,[11] the evidence was immaterial and entitled to so little weight it was appropriately disregarded by the Appeals Council. Therefore, with regard to the consideration of the new evidence, the Appeals Council is due to be affirmed.

---

[9] An "extreme" limitation is one that is more limiting than "mild," "moderate," or "marked" limitations. (*See* Tr. 34).

[10] The court is mindful that in some instances, it may be possible for a retrospective diagnosis to shed light on a Plaintiff's earlier state of disability. *See, e.g., Watkins v. Astrue*, 925 F. Supp. 2d 1257, 1262-65 (N.D. Ala. 2013) (holding evidence new, material, and relevant even though pertinent report described event occurring four months after the ALJ's decision because the medical evaluation described symptoms that "due to their nature and severity, could bear on [t]he claimant's condition during the relevant period"). As presented here, however, Dr. Wilson's evaluation of Plaintiff's conditions during the relevant period differs so dramatically from the assessments actually made during that time period that it simply cannot be said that he has provided an accurate view of her earlier condition. Just by way of example, at the time of Dr. Wilson's evaluation, Plaintiff complained of significant back pains, which she claims made it hard to even walk. (Tr. 36-37). Plaintiff was also on medication to help her sleep (Tr. 37). Of course, the ALJ found Plaintiff's prolonged absence of medication relevant. (Tr. 64). Plaintiff's personal life had changed significantly, as she reported to Dr. Wilson that she was single and now living in an abandoned house without power. (*Compare* Tr. 37-38, *with* Tr. 80). Additionally, even Plaintiff's description of her background varied in some ways from her earlier evidence. For instance, Plaintiff's education level escalated from a relatively consistent eighth grade level during the earlier proceedings to tenth grade level for Dr. Wilson. (*Compare* Tr. 38, *with* Tr. 77).

[11] To be clear, some of the medical records and evidence that Dr. Wilson relied on were before the ALJ at the time of his decision. (*See* Tr. 36).

**B.      The ALJ Applied Proper Legal Standard for Determining Whether Plaintiff Could Perform Past Work.**

Plaintiff's second argument is that the ALJ failed to apply the proper legal standard for determining whether Plaintiff can perform past work and that the ALJ's finding was not supported by substantial evidence.   (Pl. Mem. 12-15).   Plaintiff does not specify which legal standard the ALJ failed to apply in making this assessment, but regardless, the record is clear that the ALJ properly analyzed Plaintiff's ability to perform past work.

The ALJ correctly evaluated Plaintiff's application using the Commissioner's five-step sequential evaluation process.   (Tr. 11-12).   At step four, the ALJ must determine whether the claimant could perform her past relevant work.   *See* 20 C.F.R. § 404.1520(a)(4)(iv).   At this step, the claimant bears the burden of proving she cannot perform her past relevant work.   *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); *see also Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986) (claimant must show inability to do previous type of work, not merely specific job held).   To determine if the claimant can perform her past relevant work, an ALJ must assess the claimant's RFC.   20 C.F.R. § 404.1520(e).   A claimant's RFC is an assessment of what a claimant can do despite her limitations and is based on an evaluation of the relevant evidence in the record.   20 C.F.R. §§ 404.1545(a)(1).   At a hearing, the ALJ has the responsibility of assessing the claimant's RFC.   20 C.F.R. § 404.1546(c); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor.").   Based on a claimant's RFC, the ALJ weighs the evidence and decides whether it supports a finding that the claimant could perform past work.

This court will not disturb the ALJ's decision if, in light of the record as a whole, it appears to be supported by substantial evidence.   *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).   Substantial evidence is less than a preponderance, and is only such relevant evidence that

a reasonable person would accept as adequate to support a conclusion.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   Here, the court must not reweigh the evidence; rather, it is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   For the following reasons, this court finds that the ALJ applied proper legal standards and that his determinations regarding Plaintiff's limitations are supported by substantial evidence.

Before proceeding to the fourth prong of his sequential analysis, the ALJ completed the RFC assessment by looking to the entire record — including Plaintiff's own testimony and her medical records.   (Tr. 64-65).   Plaintiff does not appear to directly challenge this assessment. The ALJ questioned Dr. Green, a vocational expert, regarding a hypothetical individual with Plaintiff's same age, education, past relevant work experience, and RFC.   (Tr. 89-91).   Dr. Green testified that a similar claimant would not be precluded from performing Plaintiff's past work experience.   (Tr. 90).   Finally, the ALJ concluded that given (1) Plaintiff's RFC, (2) the demands of her past work as a waitress, cook, and manager, and (3) the testimony of Plaintiff's vocational expert, Plaintiff could perform her past relevant work experience.   (Tr. 65).

This finding was supported by substantial record evidence.   The ALJ placed significant weight on the evaluations completed by Drs. Davis and Estock.   (Tr. 64-65).   Dr. Davis provided a consultative examination of Plaintiff on August 27, 2010, and concluded that Plaintiff's descriptions were not particularly credible.   (Tr. 348).   Instead, Dr. Davis found Plaintiff to be merely acting out behaviorally.   (Tr. 347).   The ALJ found this opinion was due to be given significant weight for two reasons.   First, Dr. Davis's testimony was consistent with the medical records and reports of Plaintiff's treating physicians and the evidence as a whole.   Second, Dr. Davis was a specialist in Psychology and a Program medical expert.   (Tr. 65).

20

Similarly, the ALJ gave significant weight to Dr. Estock, the State Agency medical consultant who provided assessments at the initial level and found Plaintiff was not disabled. (Tr. 363-76).   According to the ALJ, Dr. Estock's opinion showed that Plaintiff was only moderately limited in key areas and that Plaintiff had no episodes of deterioration.   (*See* Tr. 373).   This diagnosis served as the basis of the ALJ's hypothetical questions to the vocational expert at the hearing.   (*See* Tr. 90).   As discussed above, the court relied on Dr. Green's testimony as a vocational expert, which supported the ALJ's finding that Plaintiff could perform her past relevant work experience.   (Tr. 90).

Ultimately, it was Plaintiff who failed to carry her burden of proving that she could not perform past relevant work.   The ALJ applied the proper legal standards, and his findings were supported by substantial evidence.

### C.      The ALJ Stated Adequate Reasons for Finding Plaintiff Not Credible.

Plaintiff's third argument is that the ALJ failed to state adequate reasons for finding claimant not credible.   (Pl. Mem. 15-17).   This argument addresses the ALJ's findings regarding Plaintiff's subjective complaints of pain.   The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms.   A claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged symptoms or (3) that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).   If the objective medical evidence does not confirm the severity of the alleged symptoms but the claimant establishes that her impairment could reasonably be expected to produce her alleged symptoms, then the ALJ must evaluate the

21

intensity and persistence of her alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26.   Here, the ALJ found that Plaintiff met this pain standard, and then continued in the analysis and evaluated Plaintiff's credibility.   (Tr. 62-65).

Of course, even when a claimant meets the pain standard, that alone does not require an ALJ to accept a claimant's complaints of pain.   The Eleventh Circuit has made clear that meeting the judicial pain standard is only a threshold inquiry and that the ALJ may still reject the complaints by offering specific reasons. *See Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995).   Even though the ALJ found Plaintiff established a medical condition which could reasonably be expected to cause her alleged pain, that does not mean that the ALJ cannot discredit her testimony regarding the level of severity of the alleged pain and whether it actually caused the limitations alleged.   *See id.*   Therefore, the ALJ was still required to undertake a credibility analysis; he did so, and the issue now becomes whether his credibility findings were proper.

The reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).   The Eleventh Circuit has held that this requires an "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony."   *Moore*, 405 F.3d at 1212 n.4.   A clearly articulated credibility finding supported by substantial evidence in the record will not be disturbed by a reviewing court.   *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

In this case, the ALJ's decision reveals that he correctly applied these standards and clearly articulated numerous reasons for discrediting Plaintiff's subjective pain testimony based on the entirety of the record as it existed at the time of his decision.   (*See* Tr. 62-65).   First, the

ALJ noted that Plaintiff cared for her personal needs independently, prepared her own meals, and occasionally interacted with others socially.   (Tr. 63; *see* Tr. 229-36).   Second, the ALJ considered Plaintiff's friend's report on behalf of Plaintiff, which largely confirmed Plaintiff's testimony that she lived alone, prepared some of her own meals, and could do housework depending on her state of mind.   (Tr. 63; *see* Tr. 205-12).   Plaintiff counters that her ability to participate in daily activities of short duration is not dispositive.   (Pl. Mem. 16-17 (citing *Lewis*, 125 F.3d at 1441); *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985); *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998)).   To be considered disabled, Plaintiff argues, a claimant need not be bedridden or unable to perform any household chores.   *Id.* (citing *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003)).   However, as the ALJ made clear, his decision was not based solely on Plaintiff's ability to perform daily activities.   (*See* Tr. 63-65).

The ALJ also completed a thorough review of Plaintiff's medical records. (*See* Tr. 63-64).   In his decision, he articulated each incident of Plaintiff's treatment or hospitalization during the relevant period (and, in addition, some prior to that).   Among the medical evidence considered were the evaluations by medical experts, Drs. Davis and Estock.   (*See* Tr. 345-48, 363-76).   In relevant part, Dr. Davis report concluded that, although Plaintiff's description of symptoms might fit a generalized anxiety disorder, Plaintiff's descriptions of panic attacks were not particularly credible.   (Tr. 348).   The ALJ correctly noted that Dr. Davis's evaluation is due to be given relatively greater weight because he is a specialist. (Tr. 65); *see* 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5).   Similarly, Dr. Estock found that Plaintiff had only "moderate" limitations with no episodes of decompensation, and further concluded that Plaintiff's impairments were not severe based on Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders.   (Tr. 373).   The ALJ deemed the remainder of Plaintiff's medical history to be consistent with the findings of both Dr. Davis and Dr. Estock.    (Tr. 65).

Finally, the ALJ concluded that Plaintiff was "generally under control."   (Tr. 64).   The ALJ made this finding, in part, because Plaintiff reported there were time periods when she did not consistently take medication for her alleged impairments.   (*See* Tr. 82).   To this end, the ALJ found it relevant that the record evidence showed Plaintiff was noncompliant with her treatment and that the type of treatment prescribed was not what one would expect from a totally disabled individual.   (Tr. 64).   Certainly, the record evidence provides a substantial basis for this conclusion.   On February 18, 2011, when Plaintiff returned to CCC for a third time, Plaintiff's therapist, Bonne Evans, found Plaintiff to have a poor history of compliance with treatment.   (Tr. 398; *see also* 80-84, 87, 344, 398).   Plaintiff was not provided with medication management, but rather was told to attend individual therapy.   (Tr. 80, 394-98, 400-09).   Later, on March 18, 2011, Plaintiff returned to Jackson Mental Health Clinic for a follow-up appointment with Evans and Dr. Jeter for individual therapy (Tr. 403).   At this appointment, Plaintiff was found to be active and cooperative in developing a treatment plan, which again did not immediately anticipate medication management, only individual therapy.   (Tr. 80, 408).

After considering the above-referenced evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."   (Tr. 64).   Because the ALJ based his opinion of Plaintiff's credibility on the entire record, including Plaintiff's relevant medical history and physician reports, Plaintiff's own reports of her functionality, and third-party reports of her condition, the court concludes that the ALJ's reasons given for discrediting pain testimony are based on substantial evidence.

Accordingly, this clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by this reviewing court.

### D.     Plaintiff Does Not Meet the Requirements Under Listings 12.04 and 12.06.

As part of her fourth argument, Plaintiff contends that her impairments met or equaled Listing 12.04, for affective disorders, and 12.06, for anxiety related disorders.[12]   (Pl. Mem. 17-23).   The court disagrees.   Plaintiff has not pointed to any specific evidence to support this conclusion; rather, she has attempted to submit, wholesale, several of her medical records through her briefing.   (Pl. Mem. 17-23).   Although Plaintiff was diagnosed with an affective disorder (depression) and an anxiety-related disorder (panic disorder), these diagnoses alone are insufficient to satisfy the criteria of a listed impairment. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." (citing 20 C.F.R. §§ 404.1525, 416.925, 404.1526, 416.926)).   A complete review of the record makes clear that Plaintiff has failed to meet or equal all the requirements of Listing 12.04 and Listing 12.06.

At step three of the sequential evaluation, the ALJ was required to determine whether Plaintiff's impairments met or equaled an impairment listed in the regulations Listing of Impairments (*i.e.*, a "Listing").   *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (providing that a claimant may establish disability if she proves her impairments meet or equal a Listing).   To "meet" a Listing, a claimant must have a diagnosis included in the listings and provide medical reports documenting that the conditions meet the specific criteria of the listings.   *See Wilson*, 284 F.3d

---

[12] Although Plaintiff does not identify under which subsection she intends to proceed, the court concludes, as the Commissioner has concluded (Def. Mem. 17) that the only plausible challenge is under subsection "B" of each listing.

at 1221.   For a claimant to show that his impairment matches a Listing, she must establish that it meets *all* of the specified medical criteria.   20 C.F.R. §§ 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).   To "equal" a Listing, by contrast, the medical findings must be at least equal in severity and duration to the listed findings.   *See Wilson*, 284 F.3d at 1224.   A claimant cannot qualify under an "equivalence" theory by showing that the overall impact of his unlisted impairment, or combination of impairments, is as severe as that of a listed impairment. *See Sullivan*, 493 U.S. at 531.

Listing 12.04(B) and Listing 12.06(B) both provide that a claimant should be found disabled by way of affective disorder or anxiety-related disorder which results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   A "marked" limitation means more than moderate but less than extreme.

The Eleventh Circuit explained the listing of impairments in *Wilson v. Barnhart*:

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."   If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

284 F.3d at 1224 (internal citations omitted).   Additionally, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."   *Sullivan*, 493 U.S. at 530.   "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."   *Id.*

Substantial evidence supports the ALJ's conclusion that Plaintiff has failed to meet her burden of proving her impairments met or equaled either of these Listings.   First, the ALJ gave significant weight to Dr. Estock's evaluation Plaintiff during the relevant period, which found that Plaintiff did not have a serious mental impairment.   (*See* Tr. 61, Tr. 363-75).   Dr. Estock found only moderate, and not marked, limitations and restrictions in the relevant categories under both Listing 12.04 and Listing 12.06.   (Tr. 373).   Dr. Estock further found that Plaintiff had suffered no episodes of decompensation.   (Tr. 373).   Plaintiff has not presented substantial evidence from the relevant time period that contradicts Dr. Estock's evaluation.

Specifically, with respect to her activities of daily living, the ALJ found Plaintiff had a moderate restriction because Plaintiff reported she could physically take care of herself unless she has a panic attack.   (*See* Tr. 231).   In addition, the ALJ found it relevant that Plaintiff reported that she could sometimes prepare meals and do household chores.   (*See* Tr. 231, 375). Plaintiff's friend, Edith Feldser, provided a third-party report to the ALJ, which largely confirmed that Plaintiff is independent in activities of daily living.   (*See* Tr. 205-212). Although Feldser reported Plaintiff "fear[ed] going outside" and suffered from panic attacks, Feldser also suggested that Plaintiff lived alone,[13] sometimes prepared her own meals, and did her own cleaning and laundry.   (*See* Tr. 205-07, 212).   With regard to Plaintiff's social functioning, the ALJ found that Plaintiff only had moderate difficulties because she reported spending time with other people and now has two or three friends.   (*See* Tr. 234).   With regard to concentration, persistence, or pace, the ALJ found that Plaintiff had only moderate difficulties because Plaintiff had a history of maintaining employment, which required her to focus her attention long enough to perform tasks.   Finally, again, Plaintiff has provided no evidence of decompensation.

---

[13] The record demonstrates that from time to time Plaintiff lived with friends.   (Tr. 29).

Therefore, based on this and other substantial evidence, the ALJ concluded that the requirements of Listings 12.04 and Listing 12.06 were not satisfied.   Plaintiff has failed to present any evidence suggesting that she had "marked" restrictions or any episodes of daily living during the relevant time period.   Indeed, at the time of her hearing, Plaintiff had not presented any medical expert who had concluded Plaintiff's impairments met or equaled any Listing.   (*See* Tr. 61).   Because the record shows that the ALJ's decision was based on substantial evidence, the court finds the ALJ's decision that Plaintiff's impairments, considered singly and in combination, did not meet or equal the Listings of 12.04 or 12.06 is due to be affirmed.

### E.    The ALJ Properly Considered All of Plaintiff's Impairments.

Inexplicably, Plaintiff argues that the ALJ failed to consider all of Plaintiff's severe impairments, because the ALJ "did not consider [Plaintiff's] panic attacks."   (Pl. Mem. 23). However, as Plaintiff admits immediately after making this argument, the ALJ considered Plaintiff's depression NOS and *panic disorder* as severe impairments.   (*Id.* at 23; *see also* Tr. 60).   The court concludes that, based on Plaintiff's own admission and the ALJ's numerous references to Plaintiff's panic attacks, the ALJ did not fail to consider these events.

### F.    The ALJ Properly Considered Plaintiff's Lack of Medical Treatment.

Finally, Plaintiff argues that the ALJ improperly drew adverse inferences from the lack of medical treatment she received.   (Pl. Mem. 25-27).   Plaintiff alleges that the ALJ erred by not asking any follow-up questions and failed to otherwise develop the record on the issue.   For the reasons outlined below, the court concludes that the ALJ did not improperly draw adverse inferences from Plaintiff's lack of medical treatment.

As an initial matter, the Eleventh Circuit has recognized that a claimant's failure to seek treatment for a period of time is a factor which may be considered against a claimant.   *See, e.g.,*

*Dyer*, 395 F.3d at 1211; *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).   For example, in *Dyer v. Barnhart*, the ALJ discredited the claimant's subjective complaints of pain testimony by explaining that the alleged pain had not required routine or consistent treatment, and the claimant often went for months or years without complaining to his physicians of this pain.   395 F.3d at 1211.   In that case, the Eleventh Circuit reversed the district court's opinion to the contrary, and concluded that the ALJ's findings and denial of benefits were correct.   *Id.* at 1212.   Similarly, in *Watson v. Heckler*, the court implicitly sanctioned the ALJ's consideration of the of the claimant's "failure to seek treatment after June 1981 (until after the denial of benefits by the administrative law judge)."   738 F.2d at 1173.   The *Watson* court ultimately concluded that the claimant's lack of medical treatment along with other evidence properly supported the ALJ's decision to discredit the claimant's pain testimony.   *Id.* at 1173.   Plaintiff offers no case law contradicting these controlling precedents.

On the other hand, a claimant who cannot afford prescribed medical treatment and can find no way to obtain it, may be excused from noncompliance.   *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).   When compliance with a prescribed source of treatment is at issue, the ALJ has a duty to fully investigate possible reasons for the alleged noncompliance. *See Lucas*, 918 F.2d at 1574.   In her briefs, Plaintiff cites a case from the Third Circuit which states:

> The [ALJ] must not draw any inference about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (citation omitted) (emphasis added).[14]   In this case, for the reasons outlined below, the court concludes that the ALJ's

---

[14] Even if the rule indicated by the Third Circuit would be a valid statement of law in the Eleventh Circuit, that does not help Plaintiff here.   As noted below, the ALJ did not act inconsistently with the *Newell* holding.

consideration of Plaintiff's lack of medical treatment does not serve as a basis for remand.

Contrary to Plaintiff's assertions, the ALJ did not rely on negative inferences from Plaintiff's lack of treatment without considering any explanation from Plaintiff.   *Cf. Newell*, 347 F.3d at 547.   Instead, the ALJ repeatedly asked Plaintiff to explain and justify her lack of medical treatment.   (*See* Tr. 80, 83).   In her responses, Plaintiff blamed her lack of treatment on her inability afford medication (Tr. 83), her lack of transportation (Tr. 80), and her fear of going outside (Tr. 80).   Taking into account her various excuses, the ALJ properly performed his duty to weigh and resolve the conflicting evidence.   The ALJ's reasoned findings easily satisfy Plaintiff's argument that an ALJ must first consider a claimant's proffered explanations before relying on negative inferences based upon a lack of treatment.

Moreover, the ALJ only inferred from Plaintiff's lack of medical treatment that Plaintiff's disability was "generally under control."   (Tr. 64).   First, the court notes this is different than the circumstance in which the Commissioner infers from a claimant's noncompliance that, if claimant were medicated, she would not to be disabled.   Second, and more importantly, the ALJ observed that Plaintiff had been off her regular medication since 2007.   (*See* Tr. 82, 405-08).   As of Plaintiff's March 2011 appointment at CCC, even though Plaintiff's only treatment had been infrequent clinical intakes, Dr. Jeter, her treating physician, found Plaintiff to be generally active and cooperative.   (Tr. 405-08).   Dr. Jeter and Plaintiff's therapist concluded that Plaintiff was not in immediate need of medication management (Tr. 80-81), but only advised Plaintiff to continue attending individual therapy.   (Tr. 405-406).   From this substantial evidence, the ALJ concluded that this conservative treatment at clinical intakes "is not the type of treatment one would expect from a totally disabled individual."   (Tr. 64).   Consequently, the ALJ found that Plaintiff's lack of medical treatment and her history of noncompliance undermined her argument that she was

disabled.   (Tr. 63-64).

Nor is this a case where poverty might excuse noncompliance.   Plaintiff does not contend that she had an inability to afford treatment during the relevant period.   Instead, Plaintiff argues only that prior to the relevant period in 2007, she was unable to afford medication because she was then unemployed and homeless.   (Tr. 83).   But after Plaintiff eventually found work, she asserts that her noncompliance during the relevant period was due to her lack of transportation and fear of going outside.   (Tr. 80).

Nevertheless, even without the evidence of Plaintiff's lack of medical treatment, the ALJ's decision is supported by substantial evidence.   The record simply does not reflect that the ALJ based his decision entirely, or significantly, on Plaintiff's noncompliance alone.   (Tr. 64-65). Thus, this case is unlike *Lucas v. Sullivan*, where the court remanded after the ALJ concluded that the claimant's intermittent noncompliance is "a primary cause of [her] seizures." *See* 918 F.2d at 1572.   As detailed above, the ALJ's decision rested on a voluminous amount of evidence in the record.   Plaintiff's noncompliance was merely one minor factor referenced in the ALJ's decision. The other relevant evidence, included but was not limited to, Plaintiff's medical records (Tr. 265-344, 349-62, 377-409), medical expert mental evaluations (Tr. 345-48, 363, 376), evaluations by Drs. Davis and Estock (Tr. 64-69), Plaintiff's own testimony and reports (*see* Tr. 71-88, 92-94, 227-36), nonmedical third-party reports (Tr. 205-215), and testimony from vocational expert Dr. Green (*see* 88-92).   Taken together, these items alone provide substantial evidence supporting the ALJ's findings.   Accordingly, to the extent the ALJ failed to consider Plaintiff's ability to afford medication, it is not a reversible error.   *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (concluding that when an ALJ does not significantly base his decision on a claimant's noncompliance, even the ALJ's failure to consider the claimant's ability to afford his seizure

31

medication is not a reversible error).

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.   The Commissioner's final decision is therefore due to be affirmed.   A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this February 9, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE